UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARCIA L. COLE-ARMENTINO,

            Plaintiff,

            v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

            Defendant.

No. 2:13-CV-0314-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 18, 19. Attorney Joseph Linehan represents Marcia L. Cole-Armentino (Plaintiff); Special Assistant United States Attorney Jeffrey Eric Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits on December 28, 2009, and Supplemental Security Income (SSI) on February 5, 2010, alleging disability since November 18, 2009, due to "Type 2 diabetes/vision problems/back, legs and feet/thyroid/depression." Tr. 202-203, 209-213, 223. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Marie Palachuk held hearings on June 7, 2011, and October 25, 2011, Tr. 35-88, and issued an unfavorable decision on November 17, 2011, Tr. 14-27. The

Appeals Council denied review on June 28, 2013. Tr. 1-5. The ALJ's November 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 26, 2013. ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on November 20, 1961, and was 47 years old on the alleged onset date, November 18, 2009. Tr. 48, 234. Plaintiff went to school through the ninth grade and stopped attending school due to a pregnancy and the premature birth of her first child. Tr. 50. She testified at the administrative hearing she has not obtained her GED but has obtained a certificate to be a nurse assistant registered. Tr. 50. Plaintiff had four children, two of whom are deceased. Tr. 48-49. Her two children work and reside in Spokane. Tr. 49. Plaintiff indicated she last worked as a nurse's aide/caregiver. Tr. 51, 59. Prior to working as a caregiver, she worked six years as a janitor at Fairchild Air Force Base. Tr. 59-60, 81. She also worked approximately 18 years managing a carnival with her husband. Tr. 60, 82.

Plaintiff testified regarding physical and emotional abuse from her first husband, Tr. 53-54, problems associated with a subsequent spouse, Tr. 52-53, and emotional trauma from the deaths of her mother and two sons, Tr. 48-49. She described difficulties with sleep at night, including flashbacks, waking two to three times a night, and waking with sweats, Tr. 53-54, and stated she often has panic attacks at night which last about an hour or more, Tr. 57. She indicated she is sometimes lucky to get four hours of sleep at night, while on other occasions she is able to sleep through the night. Tr. 53-54. She testified she has trouble concentrating, has problems with feeling overwhelmed, and does not like to be

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

around a lot of people.  Tr. 54-55.  Plaintiff stated the counseling she had been attending for the seven months prior to the administrative hearing had been helpful. Tr. 54.

Plaintiff also described pain she experiences in her lower back, from her tailbone down through her legs.  Tr. 56, 59.  She indicated the pain and neuropathy were always present and she had been receiving injections for these issues.  Tr. 56. Plaintiff stated she also has difficulty with reaching with her upper extremities and is only able to comfortably lift and carry five to 10 pounds.  Tr. 58-59.

Plaintiff testified she was able to take care of her own personal needs on a daily basis and was able to help out around the house, including doing some dusting and laundry.  Tr. 57.  She reported she also took care of a small dog and was able to use public transportation to visit her grandchildren on the other side of town.  Tr. 57-58.  When asked about alcohol and drugs, Plaintiff stated she does not drink, had tried methamphetamine on one occasion, and previously had a medical marijuana license but no longer used marijuana because she found it did not help her pain.  Tr. 55.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to

more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 18, 2009, the alleged onset date. Tr. 16. At step two, the ALJ

determined that Plaintiff had the following severe impairments:  spondylosis of the thoracic, lumbar and cervical spine; spondylolisthesis of the lumbar spine; diabetes mellitus; chronic pain syndrome; undifferentiated somatoform disorder; major depressive disorder; opiate/substance abuse; and personality disorder, not otherwise specified.  Tr. 17.  At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments.  Tr. 18.

The ALJ assessed Plaintiff's RFC and determined she could perform less than a full range of light exertion level work.  Tr. 19.  The ALJ determined Plaintiff had the following limitations:  she can frequently lift and/or carry ten pounds and occasionally lift and/or carry 20 pounds; she can sit, stand and walk six hours out of an eight-hour workday; all posturals can be performed frequently, except she can only climb ladders, ropes or scaffolds occasionally; she can understand, remember and carry out simple, routine, repetitive instructions and tasks; she is able to make simple, work related decisions, ask for help and ask questions, as needed; and she can maintain attention and concentration for two-hour intervals, generally required between regularly scheduled breaks.  Tr. 19.

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a cleaner, housekeeper.  Tr. 26.  The ALJ thus determined Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 18, 2009, the alleged onset date, through the date of the ALJ's decision, November 17, 2011.  Tr. 27.

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred because she is more limited from a psychological standpoint than what was determined by the ALJ in this case.  ECF

1    No. 18 at 13.  Plaintiff specifically argues the ALJ failed to properly consider the

2    opinions of examining medical sources John Arnold, Ph.D., and W. Scott Mabee,

3    Ph.D., regarding her psychological limitations.  ECF No. 18 at 13-16.  Plaintiff

4    additionally asserts the ALJ erred by providing improper rationale to reject

5    Plaintiff's testimony regarding her symptoms.  ECF No. 18 at 16-18.

6                                    **DISCUSSION**

7    **A.    Plaintiff's Credibility**

8          Plaintiff argues the ALJ erred by failing to properly consider or reject her

9    symptom testimony.  ECF No. 18 at 16-18.

10          It is the province of the ALJ to make credibility determinations.  *Andrews v.*

11   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be

12   supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231

13   (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying

14   medical impairment, the ALJ may not discredit testimony as to the severity of an

15   impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157

16   F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the

17   ALJ's reasons for rejecting the claimant's testimony must be "clear and

18   convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General

19   findings are insufficient:  rather the ALJ must identify what testimony is not

20   credible and what evidence undermines the claimant's complaints."  *Lester*, 81

21   F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

22          In this case, the ALJ found Plaintiff's medically determinable impairments

23   could reasonably be expected to cause some of the alleged symptoms; however,

24   Plaintiff's statements concerning the intensity, persistence and limiting effects of

25   the symptoms were not credible to the extent they were inconsistent with the ALJ's

26   RFC assessment.  Tr. 20.

27          As indicated by the ALJ, the medical evidence of record does not support

28   Plaintiff's subjective complaints.  Tr. 20.  A lack of supporting objective medical

evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ noted an October 2005 lumber spine MRI, Tr. 476, November 2005 EMG nerve conduction testing, Tr. 477, a 2009 neurological examination, Tr. 521-528, 2007 imaging of the lumbar spine, Tr. 583, and January 2011 thoracic spine imagining, Tr. 958, did not support Plaintiff's complaints of disabling back pain. Tr. 20. Moreover, the ALJ noted that despite complaints of disabling mental impairments, Plaintiff reported no history of psychotherapy or psychiatric hospitalizations as of 2007 and no active counseling as of 2009. Tr. 20. It was appropriate for the ALJ to conclude that the objective medical evidence did not support allegations of disability by Plaintiff.

The ALJ indicated Plaintiff also expressed improvement of her mental health symptoms with psychiatric medication. Tr. 20. An ALJ may rely on the effectiveness of treatment to find a plaintiff's testimony unpersuasive. 20 C.F.R. § 416.929(c)(3) (the effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms), *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (impairments controlled by treatment cannot be considered disabling). In August 2007, an examining medical professional reported Plaintiff's depression was "well controlled" with medication. Tr. 485-486. It was proper for the ALJ to rely on Plaintiff's indication of improvement of symptoms as a basis to find her less than fully credible in this case.

The ALJ further noted the record revealed Plaintiff had worked with her allegedly disabling conditions. Tr. 20-21. The ability to work can be considered in assessing credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted a plaintiff's testimony

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

because she recently worked as a personal caregiver for two years and had since sought out other employment).  While Plaintiff claimed a disability onset date of November 18, 2009, the record reflects an independent medical evaluation had cleared her to return to work no later than January 2010, and Plaintiff had been terminated from a job in January 2010.  Tr. 743, 750.  The ALJ indicated the fact that Plaintiff's impairments did not prevent her from working and that she ceased working for reasons unrelated to her impairments suggested her impairments were not as limiting as alleged.  Tr. 20-21.

The ALJ next indicated the record reflected Plaintiff had compliance/effort issues.  Tr. 21.  A lack of cooperation during an examination or a display of "poor effort" by a claimant may be used to illustrate a claimant's tendency to exaggerate.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The ALJ noted medical reports showed Plaintiff "self-limited most activities," she "did not cooperate with scheduling for testing," and she had "inconsistent performance."  Tr. 21, 490-491.  The fact that Plaintiff displayed cooperation/effort problems discounts her claim of disabling symptoms.

The ALJ additionally mentioned Plaintiff's history of substance abuse.  Tr. 21.  An ALJ may properly consider evidence of a claimant's drug use and drug-seeking behavior in assessing credibility.  *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).   As noted by the ALJ, despite a positive drug screen for marijuana, Plaintiff did not admit to regular use of the drug in January 2010.  Tr. 21, 758.  In December 2010, she reported she only used marijuana when it was provided by a neighbor.  Tr. 946.  On February 17, 2010, Plaintiff called her provider requesting an early refill of hydrocodone and lorazepam.  Tr. 21, 837.  On February 25, 2010, Plaintiff presented to the emergency room and tested positive for methamphetamine and opiates.  Tr. 829.  The emergency department provider confronted Plaintiff about her drug abuse and explained to her that methamphetamine/opiate use was multiplying her problems.  Tr. 829.  In 2011,

Plaintiff's provider reported Plaintiff had been to the emergency room over 10 times in the last six to eight months for pain management, on each occasion requesting pain medication. Tr. 954. The provider stated he had concerns about drug seeking behavior, as Plaintiff's concerns and complaints did not correspond to her actions in the examination room. Tr. 21, 954. In May 2011, Plaintiff violated her pain contract due to a positive drug test. Tr. 21, 1073. In August 2011, Plaintiff experienced acute opiate withdrawal. Tr. 21, 1146-1147. Plaintiff described the episode as a "drug induced coma." Tr. 1146. At the hospital following the incident, Plaintiff's boyfriend indicated Plaintiff had in the past used cocaine, amphetamines and methamphetamines. Tr. 21, 1113. Based on the foregoing, it was appropriate for the ALJ to find Plaintiff's ongoing drug use and drug seeking behavior reduced her credibility. Tr. 21.

The ALJ noted that secondary gain issues may also be present in this case. Tr. 21. "Secondary gain" refers to a significant psychological motivation that a patient may have for reporting symptoms. *Townsend v. Astrue*, 2013 WL 687042 (D. Or. 2013). The ALJ may consider the issue of secondary gain in rejecting symptom testimony. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain). The ALJ indicated the record reflects Plaintiff was "focused" on the need for Social Security disability income, Tr. 758, and had expressed concern her monthly DSHS payments were being reduced and felt "down" about not providing for her family during Christmas, Tr. 911. Tr. 21. The ALJ also mentioned the opinion of George R. Harper, M.D., that Plaintiff "has a very high disability conviction." Tr. 23, 481. It was appropriate for the ALJ to consider evidence regarding Plaintiff's possible motivation for secondary gain in assessing her credibility in this case.

Lastly, the ALJ held that Plaintiff's ability to "perform a full range of daily activities" was inconsistent with the nature, severity and subjective complaints of

Plaintiff.  Tr. 21.  It is well-established that the nature of daily activities may be considered when evaluating credibility.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ indicated that Plaintiff was able to babysit, go to the casino, go to movies, tend to her roses, walk up to a quarter mile, travel to Montana to visit relatives, cycle up to four times a week, use a treadmill and weights, ride public transportation, grocery shop, and feed/walk her dog.  Tr. 21.  This level of activity is not consistent with Plaintiff's claim of disability.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  After reviewing the record, the Court finds the ALJ provided ample clear and convincing reasons that are fully supported by the evidence of record for discounting Plaintiff's subjective complaints.  Accordingly, the ALJ did not err by concluding Plaintiff's subjective complaints regarding the extent of her symptoms and limitations were not entirely credible in this case.

**B.   Medical Source Opinions**

Plaintiff contends the ALJ also erred by failing to accord proper weight to the opinions of examining medical sources regarding her psychological limitations.  ECF No. 18 at 13-16.  Plaintiff argues the opinions expressed by John Arnold, Ph.D., and W. Scott Mabee, Ph.D., demonstrate she is more limited from a psychological standpoint than what was determined by the ALJ in this case.  ECF No. 18 at 13-16.

The ALJ concluded the objective medical evidence did not support the level of mental limitation alleged by Plaintiff.  The ALJ found that although Plaintiff has

mild restrictions in activities of daily living, mild difficulties in social functioning and moderate difficulties in concentration, persistence and pace, Plaintiff retained the RFC to understand, remember and carry out simple, routine, repetitive instructions and tasks, is able to make simple, work related decisions, ask for help and ask questions, as needed, and can maintain attention and concentration for two hour intervals, generally required between regularly scheduled breaks. Tr. 18-19. The Court finds the ALJ's interpretation of the medical record is supported by substantial evidence. *See infra.*

### 1.    Medical Opinions Prior to the Alleged Onset Date

Plaintiff alleges disability since November 18, 2009. In support of her determination regarding Plaintiff's RFC, the ALJ cites several medical reports that predate Plaintiff's alleged onset date. *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (medical opinions that predate the alleged onset of disability are of limited relevance). Although evidence from the period of time prior to the alleged onset date does not address claimant's medical status during the relevant period at issue in this case, it can be deemed useful as relevant background information.

As noted by the ALJ, George R. Harper, M.D., an orthopedic surgeon, completed a physical evaluation of Plaintiff on May 9, 2007. Tr. 23, 475-482. Dr. Harper opined that Plaintiff had a "very high disability conviction," and reported he found "nothing in her history, chart review, or her examination today to suggest that she had an objective reason why she cannot return to work." Tr. 481.

The ALJ also noted Mark Holmes, M.D., a neurologist, and Peter Taylor, M.D., an orthopedic surgeon, completed a physical assessment of Plaintiff on June 17, 2008. Tr. 23, 500-512. These physicians concluded "no objective findings are present that would preclude [Plaintiff] from employment on a reasonably continuous basis." Tr. 23, 511.

The ALJ further reported a psychiatric evaluation was completed by John Kooiker, M.D., on June 17, 2008. Tr. 23, 513-517. Dr. Kooiker indicated there

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

was no clear-cut evidence of depression, but a "good deal" of evidence of anxiety and resentment associated with the stresses connected to her mother's death and subsequent family tensions regarding the estate settlement. Tr. 23, 516. Dr. Kooiker opined there was no clear evidence linking Plaintiff's pain complaints to her work injury and that her complaints seemed to be related to conflict with her siblings about settling the estate. Tr. 23, 517. No treatment was recommended. Tr. 23, 517.

The ALJ next noted James R. Kopp, M.D., an orthopedic surgeon, and Tariq Doorani, M.D., a neurologist, completed a physical assessment of Plaintiff on March 20, 2009. Tr. 23, 521-528. Plaintiff displayed significant pain behavior on her physical examination, with a positive Waddell sign and a positive cogwheeling give-way. Tr. 527. The report explains "Waddell signs were designed . . . to be simulation, not stimulation. In other words, they do not stimulate the spine and they should be negative, even in a person who is pending surgery, but they are perceived by a patient to be something that should 'stimulate' the spine and so they are positive and they should not be." Tr. 527. "Cogwheeling giving-way is a conscious effort on the part of a claimant to fabricate a weakness that is not there." Tr. 527. Again, Plaintiff's Waddell signs and cogwheeling give-way were positive on exam. Tr. 527.

The ALJ found the foregoing medical evidence was entitled to weight because it showed Plaintiff has continuously overstated her pain complaints when compared to objective findings. Tr. 24. The ALJ concluded the above unremarkable psychological and physical testing did not indicate barriers to work, which is consistent with the record as a whole. Tr. 24.

### 2.    Dr. Schmidt, December 2009 Evaluation

On December 31, 2009, Daniel R. Schmidt, D.O., completed a Washington Department of Labor and Industries claim form limiting Plaintiff to a modified duty work level for approximately one year. Tr. 24, 652. The ALJ appropriately

accorded some weight to Dr. Schmidt's opinion which demonstrated Plaintiff was capable of performing at least a modified work schedule for a limited period, which suggested Plaintiff's limitations were temporary and allowed her to return to full-time work.  Tr. 24.

### 3.    Ms. Hammond, January 13, 2010 Evaluation

On January 13, 2010, Kimberlee Hammond, P.T., completed a physical therapy functional capacity evaluation of Plaintiff.  Tr. 24, 667-669.  It was noted Plaintiff gave variable levels of physical effort during the examination.  Tr. 24, 667.  Ms. Hammond nevertheless opined Plaintiff was capable of performing the physical demands of her pre-injury job of caring for residents that did not require medium exertion lifting.  Tr. 668.  It was recommended Plaintiff be returned to a position of work in her occupation that required very little lifting.  Tr. 669.  The ALJ accorded the report significant weight because the limit of light exertion level work was consistent with the evidence of record.  Tr. 24.

### 4.    Dr. Arnold, March 10 Evaluation

On March 16, 2010, John Arnold, Ph.D., completed a check-box Psychological/Psychiatric Evaluation form following a consultative examination of Plaintiff.  Tr. 850-855.  Dr. Arnold checked boxes indicating Plaintiff had marked limitations in her abilities to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting.  Tr. 853.  However, as noted by the ALJ, the narrative portion of Dr. Arnold's report indicates Plaintiff was able to remember locations and simple work like procedures, understand, remember and carry out simple verbal and written instructions, ask simple questions and request assistance, accept instructions and be aware of normal hazards and take appropriate precautions.  Tr. 24, 853.  The ALJ also mentioned Dr. Arnold commented about Plaintiff's exaggeration of symptoms.  Tr. 24.  Dr. Arnold noted Plaintiff's profile seemed

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

"questionably valid" since there were indications Plaintiff intended to portray herself in a consistently negative or pathological manner.  Tr. 24, 855.  Dr. Arnold wrote Plaintiff "**reports** a number of difficulties consistent with significant depressive experience."  Tr. 855 (emphasis added).

The ALJ appropriately accorded Dr. Arnold's findings of marked limitations little weight.  Tr. 24.  The ALJ noted a lack of objective evidence supporting the check-box findings.  Tr. 24.  It is permissible for an ALJ to reject a check-box report that does not contain an explanation of the bases for the conclusions made therein.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  The ALJ also indicated Dr. Arnold's check-box findings were based primarily on Plaintiff's non-credible self-reported symptoms.  Tr. 24-25.  Pursuant to *Tonapetyan*, 242 F.3d at 1149, a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a plaintiff.  Since Plaintiff was properly found by the ALJ to be not entirely credible in this case, *see infra*, the ALJ appropriately accorded little weight to medical findings based predominantly on her subjective complaints.  The ALJ did, however, accord weight to the narrative portion of Dr. Arnold's report, as well as the moderate limitations assessed by Dr. Arnold.  These findings are consistent with the weight of the record evidence.  Tr. 24.  The narrative portion of Dr. Arnold's report and the assessed moderate limitations are incorporated in the ALJ's RFC determination.  Tr. 19.

### 5.    Dr. Mabee, June 2011 Evaluation

In June 2011, Plaintiff was examined by W. Scott Mabee, Ph.D.  Tr. 1028-1036.  As indicated by the ALJ, Dr. Mabee opined Plaintiff was not actively engaged in testing and her profile was questionable; tests indicated she over-reported her symptoms.  Tr. 25, 1032.  Nevertheless, Dr. Mabee concluded Plaintiff was able to remember locations and simple repetitive work like procedures; understand, remember and carry out simple verbal and written instructions; concentrate and attend for short periods; make simple work related

decisions, request assistance and accept instructions; adhere to basic standards of neatness and cleanliness; and use public transportation.  Tr. 25, 1032-1033.  The ALJ noted Dr. Mabee reported that although Plaintiff denied abuse of pain medications, the record reflected drug-seeking behavior.[1]  Tr. 25.

The ALJ accorded "significant weight" to the foregoing narrative portion of Dr. Mabee's report because the assessed limitations and narrative report as a whole were consistent with the record evidence which demonstrated Plaintiff over-reported her symptoms.  Tr. 25.  The ALJ's RFC determination does not conflict with the narrative portion of Dr. Mabee's report.  Tr. 19.

The ALJ, however, gave "little weight" to Dr. Mabee's accompanying activities report.  Tr. 25, 1035-1036.  Defendant concedes that the ALJ's conclusion that the check-box portion of Dr. Mabee's opinion was not accompanied by objective testing was erroneous, as Dr. Mabee submitted the check-box evaluation along with the remainder of his psychological evaluation (which contained objective testing).  ECF No. 19 at 9.  However, even if the ALJ's rationale for according little weight to the check-box portion of Dr. Mabee's report is flawed, this error was "inconsequential to the ultimate non-disability determination" in this case and therefore harmless.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (an ALJ's failure to include an impairment as severe at step two was harmless error where ALJ considered the limitations posed by the impairment at step four); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir.

---

[1]Dr. Mabee's report reflects Plaintiff began using crack cocaine about five years prior to the evaluation and continued for two years; she used marijuana from age 18 until about six months prior to the exam; and Plaintiff has abused her pain medication, went to the hospital many times seeking drugs, was banned from being prescribed narcotic pain medication, and had been found positive for methamphetamine intoxication and use.  Tr. 1031.

1995) (an error is harmless when the correction of that error would not alter the

result).  In this case, the ALJ's RFC determination includes the limitations from

Dr. Mabee's narrative opinion.  Moreover, Dr. Mabee's check-box form

assessment, which found no greater than moderate impairment of Plaintiff's ability

to do work-related activities, does not conflict with the ALJ's ultimate RFC

assessment.  Any error the ALJ made in assigning "little weight" to Dr. Mabee's

activities form was harmless.

### 6.    Medical Expert Testimony, June 2011

At the June 7, 2011, administrative hearing, Minh Vu, M.D., testified as a

medical expert.  Tr. 42-47.  Dr. Vu indicated none of Plaintiff's physical

conditions, alone or in combination, met or equaled any of the listings

impairments.  Tr. 25, 45.  Dr. Vu stated that, giving weight to Plaintiff's pain

complaints, he would limit her to light exertion level work with some climbing and

postural limitations.  Tr. 25, 45.

Lloyd Meadow, Ph.D., also testified as a medical expert at the June 2011

administrative hearing.  Tr. 62-71.  Dr. Meadow stated he found the record replete

with Plaintiff's pain complaints:  she is constantly going to see doctors, is then

prescribed and takes medication for the complaints, but she reports no relief.  Tr.

65.  Dr. Meadow discussed that Plaintiff was not taking medication as directed and

was continually seeking care for her pain complaints without any objective

findings.  Tr. 25, 64-66.  He testified he did not see in the record any serious post-

traumatic stress disorder or anxiety that would preclude simple kinds of work.  Tr.

66.

The ALJ gave weight to the opinions of the medical experts.  Tr. 25.  The

medical expert testimony does not contradict the RFC assessment of the ALJ.

### 7.    Reviewing State Agency Physicians

On June 30, 2009, state agency reviewing physician, James Bailey, Ph.D.,

completed a Mental Residual Functional Capacity Assessment form, Tr. 592-595,

and a Psychiatric Review Technique form, Tr. 596-609.  Dr. Bailey opined Plaintiff was capable of performing non-complex and well-learned detailed tasks. Tr. 26, 594.  He indicated that although Plaintiff's concentration, persistence and pace could deteriorate during the day, it would not affect her ability to complete a full workday/workweek, and she would be able to have superficial public and coworker interaction and work toward goals set by others.  Tr. 26, 594.

On September 16, 2010, state agency reviewing physician, Edward Beaty, Ph.D., reviewed the record and opined no severe impairments existed because mental status examinations did not show severe limitations involving social functioning or concentration, persistence or pace.  Tr. 26, 815-827.

On September 14, 2010, state agency reviewing physician, Alfred Scottolini, M.D., completed an assessment limiting Plaintiff to light exertion level work.  Tr. 26, 814.  Dr. Scottolini noted Plaintiff's credibility issues and commented that she has "a definite deep seated disability conviction."  Tr. 26, 814.

These state agency reviewing physicians' reports lend further support for the ALJ's RFC assessment in this case.  Tr. 26.

As noted above, it is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision.  *Fair*, 885 F.2d at 604.  Based on the foregoing, the ALJ did not err by rejecting the check-box portion of Dr. Arnold's medical report, which was not consistent with the weight of the record evidence, and any error the ALJ made in discounting Dr. Mabee's activities form was harmless.  The Court finds the ALJ's RFC determination is in accord with the weight of the record evidence and free of legal error.

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

1

## CONCLUSION

2   Having reviewed the record and the ALJ's findings, the Court concludes the

3 ALJ's decision is supported by substantial evidence and free of legal error.

4 Accordingly, **IT IS ORDERED:**

5   1.   Defendant's Motion for Summary Judgment, **ECF No. 19**, is

6 **GRANTED**.

7   2.   Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

8   The District Court Executive is directed to file this Order and provide a copy

9 to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant

10 and the file shall be **CLOSED**.

11   DATED June 20, 2014.

12

13   _____

14   JOHN T. RODGERS
    UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION . . . - 18